UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRYSTAL RODRIGUEZ, NEGEEN MIRREGHABIE, and CHRISTOPHER JENNEN, on behalf of themselves, all others similarly situated, and the general public,<br><br>                                        Plaintiffs,<br><br>v.<br><br>MONDELĒZ GLOBAL LLC,<br><br>                                        Defendant. | Case No.:  23-cv-00057-DMS-AHG<br><br>**ORDER**<br>**(1) GRANTING IN PART AND DENYING IN PART DEFENDANT'S REQUEST FOR JUDICIAL NOTICE;**<br>**(2) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS; AND**<br>**(3) DENYING DEFENDANT'S MOTION TO STAY PROCEEDINGS** |

Pending before the Court is Defendant Mondelez Global LLC's ("MDLZ" or "Defendant") motion to dismiss Plaintiffs' First Amended Complaint, or alternatively, to stay proceedings (ECF No. 16); and MDLZ's request for judicial notice (ECF No. 17). Plaintiffs allege that MDLZ induced Plaintiffs to purchase chocolate bars by fraudulently concealing the fact that they contained high levels of toxic metals.  Plaintiffs filed an opposition to the motion and a partial objection to the request for judicial notice, (ECF Nos. 18, 19), and MDLZ filed replies (ECF Nos. 20, 21).  For the following reasons, MDLZ's request for judicial notice is granted in part and denied in part; its motion to dismiss is granted in part and denied in part; and its motion to stay proceedings is denied.

1

# I.
# BACKGROUND

In this putative class action, Plaintiffs allege that Defendant MDLZ deceptively marketed and sold dark chocolate bars containing unsafe levels of lead and cadmium. Defendant MDLZ (Mondelez Global LLC) is a subsidiary of Mondelez International, Inc., a multinational confectionery, food, and beverage company.   (First Amended Complaint ("FAC") ¶ 1, ECF No. 14.)   MDLZ markets and sells dark chocolate products under a variety of brand names, including Green & Black's Organic Dark Chocolate 70% Cacao ("G&B 70%"), Green & Black's Organic Dark Chocolate 85% Cacao ("G&B 85%"), and Hu Organic Simple Dark Chocolate 70% Cacao ("Hu 70%").   (*Id.*)   G&B 70%, G&B 85%, and Hu 70% ("Products") are the focus of this lawsuit.

Plaintiffs allege that MDLZ made misleading representations in advertising and marketing the Products and that these misleading representations caused them to purchase the Products believing they were safe, although they contained unsafe amounts of lead and cadmium.  MDLZ has made the following representations about the Products:

- "We obsessively vet every ingredient"
- "We help people get back to human"
- "No weird ingredients. Ever."
- "SIMPLE"
- "the way humans ate before industry ruined food"
- "ultra simple ingredients"
- "Get Back to Human"
- "replace weird, industrial ingredients with simple, healthier ones"

Plaintiffs' allegations regarding unsafe levels of lead and cadmium in the Products rely on government and independent sources.  The independent sources include a March 2023 article from the website of the nonprofit organization As You Sow ("AYS") and a December 2022 Consumer Reports article.  Plaintiffs allege MDLZ has had notice that its Products contain unsafe levels since at least 2014, when MDLZ was the defendant in a

lawsuit brought by AYS.  In that lawsuit, AYS sued MDLZ and other dark chocolate manufacturers asserting that various chocolate products contained lead and cadmium in excess of the Maximum Allowable Dose Levels ("MADLs") set by regulation promulgated pursuant to California's Proposition 65.  (*See* Def. Ex. 1, ECF No. 16-2.) Despite having notice, Plaintiffs allege MDLZ has continued to mislead consumers with fraudulent omissions and misrepresentations.  Plaintiffs allege if they had known the Products contained toxic metals, they would not have purchased the Products or would have paid less.

In 2015, AYS sued various chocolate manufacturers, including MDLZ, in San Francisco Superior Court asserting that various chocolate products contained lead and cadmium in excess of the MADLs set by regulation pursuant to Proposition 65 in California.  (*See* Def. Ex. 1.)  The court entered a consent judgment between AYS, MDLZ, and other chocolate manufacturers ("Consent Judgment"), which remains in effect until at least December 2024.  The Consent Judgment set alternative thresholds in place of the MADLs for the relevant MDLZ Products and decreed that compliance with the Consent Judgment thresholds would constitute compliance with Proposition 65 for lead and cadmium.  The Consent Judgment precludes subsequent litigation of "all Proposition 65 claims that were raised in the Action, or which could have been raised in the Action."  (Def. Ex. 1, at 8.)

Plaintiffs bring this putative class action alleging violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq., False Advertising Law ("FAL"), *id.* § 17500 et seq., Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 et seq., breach of express warranties, breach of implied warranty of merchantability, and unjust enrichment.  Plaintiffs seek, among other forms of relief, money damages and an injunction requiring MDLZ to "disclose lead or cadmium when present" so consumers "could be assured, by the absence of a disclosure, that the Products no longer contained unsafe levels of toxic metals, including lead or cadmium."  (FAC ¶ 64.)  Plaintiffs allege they would like to purchase the Products in the future but

will not do so without an injunction because they cannot rely on MDLZ's advertising.

## II.
## LEGAL STANDARDS

### A. Judicial Notice

The Court may judicially notice facts that are "not subject to reasonable dispute" and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "A court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). However, courts "cannot take judicial notice of disputed facts contained in such public records." *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 887 (9th Cir. 2018).

### B. Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. If Plaintiffs have not nudged their "claims across the line from conceivable to plausible," the complaint "must be dismissed." *Id.* at 570.

In reviewing the plausibility of a complaint on a motion to dismiss, a court must

4

"accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But courts are not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

In addition, fraudulent misrepresentation claims must satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *Zeller v. Optavia, LLC*, No. 22-CV-434-DMS-MSB, 2022 WL 17858032, at *12 (S.D. Cal. Dec. 22, 2022). Rule 9(b) requires a plaintiff alleging claims sounding in fraud to "state with particularity the circumstances constituting fraud or mistake," Fed. R. Civ. P. 9(b), including "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007); *see also In re Google Assistant Priv. Litig.*, 546 F. Supp. 3d 945, 955 (N.D. Cal. 2021) (a claim of fraud "must be accompanied by the who, what, when, where, and how of the misconduct charged") (internal quotations omitted).

When a court grants a motion to dismiss a complaint, it must then decide whether to grant leave to amend. Leave to amend "shall be freely given when justice so requires," Fed. R. Civ. P. 15(a), and "this policy is to be applied with extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). A court should grant leave to amend where there is no (1) "undue delay," (2) "bad faith or dilatory motive," (3) "undue prejudice to the opposing party" if amendment were allowed, or (4) "futility" in allowing amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." *Intri-Plex Techs. v. Crest Group, Inc.*, 499 F.3d 1048, 1056 (9th Cir. 2007).

/ / /

/ / /

## III.
## DISCUSSION

### A. Defendant's Request for Judicial Notice

MDLZ seeks judicial notice of fourteen exhibits:

1. The Consent Judgment entered in *As You Sow v. Trader Joe's Co.*, No. CGC-15-548791 (Cal. Super. Ct. S.F. Cnty. Feb. 14, 2018) (Def.'s Req. for Judicial Notice ("RJN") at 1, ECF No. 17; Decl. of Alexander Smith in Supp. of Def.'s Mot. to Dismiss ("Smith Decl."), Ex. 1, ECF No 16-1);

2. A webpage from the United Nations Environment Programme titled "UNEP's activities on lead and cadmium" cited in the FAC (RJN at 1; Smith Decl., Ex. 2);

3. A Consumer Reports article, *Lead and Cadmium Could Be in Your Dark Chocolate*, cited in the FAC (RJN at 1; Smith Decl., Ex. 3);

4. A webpage from Centers for Disease Control and Prevention titled "Cadmium Factsheet" cited in the FAC (RJN at 1; Smith Decl., Ex. 4);

5. A webpage from the Better Health Channel titled "Cadmium" cited in the FAC (RJN at 1; Smith Decl., Ex. 5);

6. A publication from the U.S. Food and Drug Administration ("FDA") titled "Lead in Food, Foodwares, and Dietary Supplements" (RJN at 2; Smith Decl., Ex. 6);

7. A notice from the FDA titled "Guidance for Industry: Lead in Candy Likely to Be Consumed Frequently by Small Children; Recommended Maximum Level and Enforcement Policy, Availability; and Supporting Document: Supporting Document for Maximum Recommended Level for Lead in Candy Likely to Be Consumed Frequently by Small Children; Availability" (RJN at 2; Smith Decl., Ex. 7);

8. A publication from the FDA titled "Supporting Document for Recommended Maximum Level for Lead in Candy Likely to be Consumed Frequently by Small Children" (RJN at 2; Smith Decl., Ex. 8);

9. The test methodology for a study discussed in the Consumer Reports article (Ex. 3)

6

1   (RJN at 2; Smith Decl., Ex. 9);

2   10. A webpage from As You Sow website titled "FAQ: Why should we worry about

3        lead and cadmium?" cited in the FAC (RJN at 3; Smith Decl., Ex. 10);

4   11. A statement from FDA titled "FDA Releases Action Plan for Reducing Exposure

5        to Toxic Elements from Food for Babies, Young Children" (RJN at 3; Smith Decl.,

6        Ex. 11);

7   12. The transcript of an FDA public meeting held on November 18, 2021, titled

8        "Closer to Zero Action Plan: Impacts of Toxic Element Exposure and Nutrition at

9        Different Crucial Developmental Stages for Babies and Young Children" (RJN at

10       3; Smith Decl., Ex. 12);

11  13. A publication from California's Office of Environmental Health Hazard

12       Assessment titled "Proposition 65 Maximum Allowable Daily Level (MADL) for

13       Reproductive Toxicity for Cadmium (Oral Route)" (RJN at 3; Smith Decl., Ex.

14       13); and

15  14. A screenshot of purported test results included on the AYS website cited in the

16       FAC (RJN at 3; Smith Decl., Ex. 14).

17  Plaintiffs object to MDLZ's RJN as to Exhibits 2, 4–8, and 12–13.  (Pls.' Opp'n to RJN

18  at 5, ECF No. 18.)  Plaintiffs further object to MDLZ's use of facts and information used

19  in the "Introduction" section of its motion to dismiss which were gleaned from these

20  exhibits.  (*Id.* at 2 n.2.)  The Court takes judicial notice of Exhibits 1, 3, 9–11, and 14,

21  which are unopposed.

22       MDLZ's arguments regarding omissions and misrepresentations rely on Exhibits 6,

23  7, 8, 12, and 13.  These documents are all available on the FDA website and are public

24  records.  MDLZ contends the Court should take judicial notice of these facts because

25  they are not subject to reasonable dispute, Fed. R. Evid. 201(b)(2), and points to other

26  cases in which courts took judicial notice of materials on government agency websites.

27  Plaintiffs argue that even if the Court does take judicial notice of these public records, it

28  should not take judicial notice of "the truth of the facts asserted therein."  *Gagetta v.*

*Walmart, Inc.,* 646 F. Supp. 3d 1164, 1172 (N.D. Cal. 2022).  The Court agrees and takes judicial notice of Exhibits 6, 12, and 13, but not of the facts contained within them subject to reasonable dispute because the documents are "not regulations, guidelines, or event studies that conclusively establish" the safety of certain elements at certain levels. *Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 845 (N.D. Cal. 2018).  In contrast, Exhibit 7 is an FDA "guidance document" and Exhibit 8 is a source the FDA relied on in promulgating Exhibit 7.  The Court may properly take judicial notice of both documents because they are agency guidelines whose authenticity is "not subject to reasonable dispute." Fed. R. Evid. 201(b).

However, a court may consider documents on which a complaint relies without having to take judicial notice of those documents if (1) the complaint references the documents; (2) the documents are central to Plaintiffs' claims; and (3) there is no question about the authenticity of the documents.  *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).  "The court may treat" such attached documents "as 'part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'"  *Id.* (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)).

MDLZ contends that Exhibits 2, 4, and 5 are the proper subject of judicial notice because Plaintiffs incorporate these exhibits by referencing them in the FAC.  (Def.'s Reply in Supp. of RJN at 1, ECF No. 21.)  It is true that Plaintiffs cite to Exhibits 2, 4, and 5 in the FAC.  (*Compare* FAC ¶ 21 n.18 *with* Smith Decl., Ex. 2; *compare* FAC ¶ 21 n.19 *with* Smith Decl., Ex. 4; *compare* FAC ¶ 21 n.16 *with* Smith Decl., Ex. 5.) However, the Court finds that Exhibits 2, 4, and 5 are not proper subjects for judicial notice because their accuracy is not beyond "reasonable dispute."  Fed. R. Evid. 201(b). The Court nonetheless considers these items, which were incorporated by reference into the FAC, as part of the FAC, and assumes their contents to be true for the purpose of Defendant's motion to dismiss. *See Marder*, 450 F.3d at 448.

Accordingly, the Court grants in part and denies in part MDLZ's request for

8

judicial notice.  The Court takes judicial notice of Exhibits 1, 3, 7, 8, 9, 10, 11, and 14; and of Exhibits 6, 12, and 13, except for the facts within them subject to reasonable dispute.  The Court declines to take judicial notice of Exhibits 2, 4, and 5.

**B. Motion to Dismiss**

1. <u>Standing</u>

MDLZ argues that Plaintiffs lack Article III standing.  Article III of the Constitution requires courts to adjudicate only actual cases or controversies.  *See* U.S. Const. art. III, § 2, cl. 1.  To establish Article III standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021).

Specifically, MDLZ argues that Plaintiffs have not alleged a sufficient injury-in-fact.  Plaintiffs must show that they "suffered an injury in fact that is concrete, particularized, and actual or imminent." *Id*.  MDLZ makes three arguments: First, Plaintiffs do not plausibly allege that the Products they purchased contained unsafe levels of lead or cadmium.  Second, because Plaintiffs rely on third-party testing, Plaintiffs do not plausibly allege that the specific Products they purchased contained unsafe levels of lead and cadmium.  Third, Plaintiffs cannot allege injury-in-fact based solely on lost money.  The Court addresses each in turn and concludes that Plaintiffs have sufficiently alleged an injury-in-fact and have adequately demonstrated Article III standing.

a.  *"Unsafe Levels" of Lead and Cadmium*

MDLZ contends Plaintiffs have not suffered an injury if the amount of lead and cadmium in the Products is not "unsafe" and Plaintiffs face no "risk of future harm." And if there is no risk of future harm, MDLZ argues, Plaintiffs cannot establish the Products are worthless or worth less than what Plaintiffs paid.  MDLZ argues: "Plaintiffs falsely suggest that the default MADLs . . . establish a threshold for safety."  (Def.'s Mot. at 13.)  Because the Consent Judgment set alternative thresholds in place of the MADLs for the Products at issue here and decreed that compliance with the Consent Judgment

9

thresholds would constitute compliance with Proposition 65 for lead and cadmium, MDLZ contends, Plaintiffs cannot allege the Products contain unsafe levels of lead and cadmium just because the levels of lead and cadmium exceed the default MADLs set by regulation.  MDLZ further argues that because Plaintiffs "do not claim the chocolate was stale or unsatisfying" and they repeatedly purchased the Products, the Products are safe.

MDLZ's arguments here fail.  What constitutes an "unsafe level" of lead or cadmium is a question of fact not appropriately resolved on a motion to dismiss.  *Bland v. Sequel Nat. Ltd.* (*Bland II*), 2019 WL 4674337, at *4 (N.D. Cal. Aug. 2, 2019).  To the extent MDLZ seeks to challenge Plaintiffs' exposure calculation methodology, it may do so at summary judgment or trial.  At this stage, Plaintiffs have plausibly alleged that *no* amount of lead or cadmium is safe for human consumption.  Accepting Plaintiffs' allegations as true, as the court must, the Court concludes that Plaintiffs have adequately shown an injury-in-fact.

### b.  *Reliance on Third-Party Testing*

Next, MDLZ contends that "Plaintiffs provide no plausible basis to allege that every single G&B 70%, G&B 85%, and Hu 70% bar sold in the United States since January 2019, including the ones allegedly bought, contained 'unsafe levels' of lead and cadmium." (Def.'s Mot. at 14.)  In effect, MDLZ argues that Plaintiffs' injury is not particularized because Plaintiffs have not shown that the specific chocolate bars they purchased and/or consumed contained unsafe levels of lead or cadmium.

Courts within this Circuit have rejected similar argument and this Court does too.  At this stage, the Court must accept as true the allegations in the complaint and draw all reasonable inferences from those allegations in favor of the plaintiff.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990).  Plaintiffs need not allege that the specific Products they purchased had "unsafe levels" of lead and/or cadmium, but "may simply aver facts from which this Court can make such reasonable inference." *Solis v. Coty, Inc.*, No. 22-cv-400-BAS, 2023 WL 2394640, at *11 (S.D. Cal. Mar. 7, 2023).  The FAC permits such a reasonable inference.  Plaintiffs allege they purchased the Products during

10

the Class Period.[1]  Plaintiffs plausibly allege the Products, as defined above, "contain[] unsafe levels of . . . lead and cadmium."  (FAC ¶ 23.)  Plaintiffs largely ground their allegations on test results published in a Consumer Reports article, (*see* Ex. 3 in Supp. of Def. Mot., ECF No. 16-2), and on the AYS website.  (*See* FAC ¶ 4 n.1.)  Plaintiffs allege that independent expert testing of the Products done in 2014, 2016, and 2022 have repeatedly shown that the G&B 70% and G&B 85% bars have levels of cadmium and lead exceeding the MADLs.  (*Id.* ¶¶ 4, 23.)  Plaintiffs also allege the Consumer Reports test found that the Hu 70% bars contained amounts of lead more than twice as high as California's MADL for lead.  (*Id.* ¶¶ 2–3.)

The Consumer Reports article explains that cacao beans grown or handled in different locations may contain different levels of cadmium and/or lead.  (*See* Ex. 3 in Supp. of Def.'s Mot.)  And MDLZ notes a test from June 2014 cited in the AYS website which determined that the amount of lead in a G&B 85% bar fell below the MADL.  (*See* Ex. 14 in Supp. of Def.'s Mot.)  But the same AYS website shows the same G&B 85% bar tested had an amount of cadmium exceeding the MADL, and that other G&B 85% bars had levels of lead and cadmium exceeding the MADLs.  (*Id.*)  The same is true for G&B 70% bars.  (*Id.*)  Importantly, Plaintiffs allege the Products "contained excessive cadmium *and/or* lead, or both."  (FAC ¶ 23, emphasis added).  These allegations do not require that every Product contain unsafe levels of both cadmium *and* lead.  Plaintiffs' allegations allow the Court to plausibly infer that the Products purchased during the Class Period contain "unsafe levels" of cadmium and/or lead.

The cases MDLZ cites do not affect the Court's conclusion.  For example, in *Birdsong v. Apple, Inc.*, 590 F.3d 955, 960 (9th Cir. 2009), the plaintiffs pled "a potential risk of hearing loss not to themselves, but to other unidentified iPod users who might

---

[1] The Class Period is January 11, 2019 to January 11, 2023.  (*See* FAC ¶ 67, stating the Class Period is "any time from four years preceding the date of the filing of this Complaint.")  The Complaint was first filed on January 11, 2023.  (*See generally* Compl., ECF No. 1.)

choose to use their iPods in an unsafe manner."  The Ninth Circuit held that the plaintiffs alleged no concrete and particularized risk of injury "*as to themselves*."  *Id.*  Unlike the plaintiffs in *Birdsong*, Plaintiffs here allege they *themselves* lost money by paying for Products they otherwise would not have purchased, or would not have paid as much for, had they known about the high levels of lead and cadmium in them.  These allegations are neither conjectural nor hypothetical.

### c.  *Lost Money*

Lastly, MDLZ's argument that Plaintiffs' alleged injury—lost money—is not an injury-in-fact is unpersuasive.  "For standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'"  *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 464 (2017).  A plaintiff's allegation that she "spent money that, absent defendants' actions," she "would not have spent" is a "quintessential injury-in-fact."  *Maya v. Centex Corp.*, 658 F.3d 1060 (9th Cir. 2011).  Plaintiffs allege they "lost money as a result of MDLZ's omissions and unfair practices in that they did not receive what they paid for when purchasing the Products."  (FAC ¶ 63.)  This is a sufficient injury-in-fact.

Courts in this Circuit routinely find standing based on lost money.  *See, e.g.*, *Barnes v. Nat. Organics, Inc.*, No. EDCV 22-314, 2022 WL 4283779, at *4 (C.D. Cal. Sept. 13, 2022) (plaintiff adequately pled injury-in-fact by alleging they would not have purchased vitamins if the manufacturer had disclosed the presence of heavy metals on the product labels); *Sinatro v. Barilla Am., Inc.*, 635 F. Supp. 3d 858, 872 (N.D. Cal. 2022) (allegations that plaintiffs would not have purchased pasta products labelled as being "from Italy" if they had known the products were made in other countries were sufficient to establish injury-in-fact); *Zeiger*, 304 F. Supp. 3d at 846 (plaintiffs sufficiently pled economic injury by alleging they would not have purchased dog food if the manufacturer had disclosed the presence of lead, arsenic, and BPA in it).  Like in *Barnes*, this Court rejects MDLZ's standing arguments based on "non-binding, out-of-circuit cases, that are unpersuasive given that the caselaw squarely supports [Plaintiffs'] standing."  *Barnes*, 2022 WL 4283779, at *4.

Plaintiffs have sufficiently alleged an economic injury-in-fact, and Defendant does not dispute causation or redressability.  The Court therefore denies Defendant's motion to dismiss this Action for lack of Article III standing.  Plaintiffs have standing to pursue their claims—at least to the extent they rely on G&B 70% and Hu 70%.[2]

2.   Proposition 65

Defendant's argument that the complaint should be dismissed for improperly relying on an underlying Proposition 65 violation fails because Plaintiffs' claims are independent of Proposition 65.

In November 1986, California voters enacted Proposition 65—the Safe Drinking Water and Toxic Enforcement Act, codified at Cal. Health & Safety Code § 25249.5 et seq.  *Cal. Chamber of Com. v. Brown*, 196 Cal. App. 4th 233, 238 (2011).  Proposition 65 provides that "[n]o person in the course of doing business shall knowingly and

---

[2] Although neither party addresses it, the Court observes that no plaintiff alleges that they purchased the G&B 85% product during the Class Period.  Ms. Rodriguez alleges she "regularly purchased" the Hu 70% products during the Class Period.  (FAC ¶¶ 52–53.)  Ms. Mirreghabie alleges she "occasionally purchased" the Hu 70% products during the Class Period.  (*Id.* ¶¶ 54–55.)  Mr. Jennen alleges he "occasionally purchased" the G&B 70% products during the Class Period.  (*Id.* ¶¶ 56–57.)  Whether Plaintiffs may assert class-wide claims based on products the named plaintiffs did not purchase but which are similar to products they did purchase, i.e., G&B 85%, is an unsettled question in this Circuit. *Compare Herskowitz v. Apple, Inc.*, 940 F. Supp. 2d 1131, 1150 (N.D. Cal. 2013) (named plaintiffs lacked standing to assert claims on behalf of customers who bought different products) *with Gordon v. Tootsie Roll Indus., Inc.*, No. 17-2664, 2017 WL 4786090, at *2–3 (C.D. Cal. Oct. 4, 2017) (plaintiffs had standing to sue over non-purchased products by alleging substantial similarity to products they actually purchased; whether they could sue on behalf of customers who purchased different products is best addressed at class certification stage).

The Court need not weigh in on this question today because under either approach, the Court finds that Plaintiffs have not pled sufficient facts to show standing to assert claims based on G&B 85%.  No plaintiff asserts that they were injured by the G&B 85% product or that the G&B 85% product is "substantially similar" to products they did purchase. *Gordon*, 2017 WL 4786090, at *2.  Accordingly, the Court **DISMISSES** Plaintiffs' claims related to the G&B 85% product. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (a federal court has an independent obligation to determine whether subject-matter jurisdiction exists even in the absence of a challenge from any party); *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004) ("A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit.").  The Court assumes that Plaintiffs can cure this deficiency in an amended complaint and therefore addresses arguments pertaining to the G&B 85% product in this Order to provide guidance.

13

intentionally expose any individual to a chemical known to the state to cause cancer or reproductive toxicity without first giving clear and reasonable warning to such individual" when the amount of exposure exceeds the "no significant risk level" set by agency regulation. Cal. Health & Safety Code §§ 25249.6, 25249.10(c). The regulations implementing Proposition 65 include a safe harbor provision. *See* 27 Cal. Code Regs. §§ 25600, 25607.2. Lead and cadmium are regulated by Proposition 65. *Id.* § 27001(b).

Proposition 65 authorizes private plaintiffs, as well as the State, to enforce its warning requirements. Cal. Health & Safety Code § 25249.7. Before filing suit, a private party must provide at least sixty (60) days' notice of the alleged violation to the Attorney General, the district attorney, city attorney, or prosecutor in whose jurisdiction the violation allegedly occurred; and to the alleged violator. *Id.* § 25249.7(d)(1). A potential plaintiff must obtain a certificate of merit affirming that the potential plaintiff consulted with an expert who believes there is "a reasonable and meritorious case for the private action." *Id.* "California courts strictly enforce the notice requirements and hold that defective notice cannot be cured retroactively." *Harris v. R.J. Reynolds Vapor Co.*, No. 15-cv-4075, 2016 WL 6246415, at *2 (N.D. Cal. Sept. 30, 2016). "A defective Proposition 65 claim should be dismissed with prejudice." *Id.* (citing *Sciortino v. Pepsico, Inc.*, 108 F. Supp. 3d 780, 790 (N.D. Cal. 2015)).

Thus, a plaintiff "cannot sidestep" the notice requirements "by trying to use the UCL or CLRA to plead around a claim that would be barred under Proposition 65." *Harris*, 2016 WL 6246415, at *2 (citing *Cel-Tech Commc'ns. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 182 (1999)). MDLZ contends that Plaintiffs' claims are "entirely derivative of an unspoken Proposition 65 violation." *Sciortino*, 108 F. Supp. 3d at 792. MDLZ explains that Plaintiffs refer to Proposition 65 in their Complaint and ground their claims in part on the MADLs set by regulation pursuant to Proposition 65. The question this Court must answer is "whether the claims asserted . . . are entirely derivative of an unspoken Proposition 65 violation, or whether they assert claims independent of Proposition 65." *Id.*

14

Merely "mentioning a Proposition 65 safe harbor level is not synonymous with claiming a specific cause of action for a violation of Proposition 65." *Cotrina v. Goya Foods, Inc.*, 94 F. Supp. 3d 1174, 1183 (S.D. Cal. 2015). In *Sciortino*, the court found one of the plaintiff's claims was independent of Proposition 65 because Proposition 65's only relevance to the claim was to "provide[] guidance as to a reasonable consumer's purchasing decisions in California." 108 F. Supp. 3d at 794. The same is true here.[3] Plaintiffs cite to, and rely in part on, the MADLs. But critically, Plaintiffs also rely on other sources to allege that the presence of lead and cadmium "in any amount" is "unsafe." (FAC ¶ 50.) Proposition 65 regulates chemicals known to cause cancer, birth defects, or other reproductive harm. *See* Cal. Health & Safety Code § 25249.6. While Plaintiffs note exposure to lead and cadmium poses a risk of cancer and reproductive issues, (FAC ¶¶ 5, 19, 21), Plaintiffs further allege that lead and cadmium can cause "irreversible damage to brain development, liver, kidneys, and bones, and other health problems." (*Id.* ¶¶ 5, 16–22.) These alleged harms are outside the scope of Proposition 65. Thus, Plaintiffs' allegations are "sufficient to support an independent duty to disclose irrespective of Proposition 65." *Bland v. Sequel Nat. Ltd.* (*Bland I*), No. 18-CV-04767-RS, 2019 WL 4658361, at *4 (N.D. Cal. Jan. 18, 2019); *see also Grausz v. Hershey Co.*, No. 23-CV-00028-AJB-SBC, 2023 WL 6206449 (S.D. Cal Sept. 11, 2023) (holding that plaintiffs' fraud by omission claims based on undisclosed presence of lead and cadmium in chocolate bars were outside the scope of Proposition 65). The Court therefore denies Defendant's motion to dismiss this Action on Proposition 65 grounds.

3. <u>Res Judicata</u>

MDLZ next contends that Plaintiffs' fraud-by-omission claims are barred by res judicata due to the Consent Judgment. This argument fails. Although "the Consent Judgment is a full, final, and binding resolution of any alleged violation of Proposition

---

[3] As noted, *infra*, the Consent Judgment sets alternative thresholds in place of the otherwise applicable MADLs for lead and cadmium as to the chocolate bars at issue in this case.

65," *Grausz*, 2023 WL 6206449, at *7, Plaintiffs' claims, as explained above, are independent of Proposition 65. Thus, the Consent Judgment has no preclusive effect on this action because Plaintiffs' claims here are not "entirely derivative" of Proposition 65. *Sciortino*, 108 F. Supp. 3d at 792.

    4.  Adequacy of Pleadings

            a.  *UCL, FAL, and CLRA*

Plaintiffs assert claims for violations of the UCL, the FAL, and the CLRA based on Defendant's alleged fraudulent omissions and misrepresentations.

> The UCL [proscribes] business practices that are 'unlawful, unfair or fraudulent,' Cal. Bus. & Prof. Code § 17200[;] the FAL prohibits the dissemination of any advertising 'which is untrue or misleading,' Cal. Bus. & Prof. Code § 17500[;] and the CLRA declares specific acts and practices in the sale of goods or services to be unlawful, including making affirmative misrepresentations or omissions regarding the 'standard, quality, or grade' of a particular good or service, Cal. Civ. Code § 1770(a).

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 985 (S.D. Cal. 2014). To state a fraudulent omission or misrepresentation claim under the CLRA, FAL, or UCL, a plaintiff must plead (1) misrepresentation or omission, (2) reliance, (3) damages. *See Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1081 (N.D. Cal. 2022) (citing *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326 (2011)). Such claims are governed by the "reasonable consumer" test—Plaintiffs must "show that members of the public are likely to be deceived" by the omission or misrepresentation. *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019) (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)). "[T]he reasonable consumer standard requires a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Id.* (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003)). But "[b]ecause what a reasonable consumer would believe is generally a question of fact, it is a rare situation in which a motion to dismiss will be granted for failure to satisfy this test." *Hammerling*, 615 F. Supp. 3d at 1082 (quoting *Dinan v.*

23-cv-00057-DMS-AHG

1   *Sandisk LLC*, 2019 WL 2327923, at *2 (N.D. Cal. May 31, 2019)).

2          Plaintiffs' CLRA, FAL, and UCL claims are based on overlapping theories of

3   liability.  First, Plaintiffs plead a fraudulent omission theory—MDLZ's failure to disclose

4   the presence of lead and cadmium in its Products induced consumers to purchase the

5   chocolate bars when they otherwise would not have.   Second, Plaintiffs plead an

6   affirmative misrepresentation theory—MDLZ "intentionally markets" its Products with

7   misrepresentations on the Product labels, the Product websites, and elsewhere, "so as to

8   convey to reasonable consumers . . . that the Products did not contain such unsafe levels

9   of toxic heavy metals."  (FAC ¶ 28.)  Because the theories of liability for the CLRA,

10  FAL, and UCL claims overlap, the Court considers them in tandem.  *See Gutierrez v.*

11  *Johnson & Johnson Consumer, Inc.*, No. 19-CV-1345-DMS-AGS, 2020 WL 6106813, at

12  *5 (S.D. Cal. Apr. 27, 2020) ("Consumer protection claims under the CLRA, FAL and

13  UCL are often analyzed together because they share similar attributes.").

                              *i.*  Omissions Theory

15         Plaintiffs fail to state claims based on their fraudulent omission theory because

16  Plaintiffs do not allege that MDLZ concealed an *unreasonable* safety hazard.   To

17  plausibly allege a fraudulent omission, the omission must either (1) "be contrary to a

18  representation actually made by the defendant," or (2) "an omission of a fact the

19  defendant was obliged to disclose."  *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 865 (9th Cir.

20  2018).  Plaintiffs allege that Defendant's failure to disclose the presence of lead and

21  cadmium in its products induced consumers to purchase the chocolate bars when they

22  otherwise would not have.

23         The Court must first determine whether MDLZ had a duty to disclose the presence

24  of lead and cadmium in the Products.  "[A] defendant only has a duty to disclose when

25  either (1) the defect at issue relates to an unreasonable safety hazard or (2) the defect is

26  material, 'central to the product's function,' and the plaintiff alleges one of the four

27  *LiMandri* factors."  *Hammerling*, 615 F. Supp. 3d at 1085 (quoting *In re Toyota RAV4*

28  *Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d 1067, 1102 (N.D. Cal. 2021)); *see Hodsdon,*

                                      17

891 F.3d at 863 (defendant lacked a duty to disclose because the plaintiffs failed to plead "a crucial element . . . that the defect must relate to the central functionality of the product"). "The *LiMandri* factors are (1) the defendant is in a fiduciary relationship with the plaintiff; (2) the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) the defendant actively conceals a material fact from the plaintiff; or (4) the defendant makes partial representations but also suppresses some material facts." *Hammerling*, 615 F. Supp. 3d at 1085 (citing *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997)). Thus, Plaintiffs must allege that MDLZ's failure to disclose the presence of lead and cadmium in its Products either (1) relates to an unreasonable safety hazard or (2) is material, "central to the product's function," and meets one of the four *LiMandri* factors. *Hodsdon*, 891 F.3d at 863.

Here, Plaintiffs argue MDLZ's omissions fraudulently conceal an unreasonable safety hazard. Based on findings published in the Consumer Reports article and AYS website, Plaintiffs allege no amount of lead is safe and even low levels of cadmium can cause health concerns. Low levels of lead can inhibit neurological function and cause "anemia, kidney damage, seizures, and in extreme cases, coma and death." (FAC ¶ 20.) Low levels of cadmium can cause kidney disease, fragile bones, "nausea, vomiting, diarrhea and abdominal pain." (*Id.* ¶ 21.) Thus, Plaintiffs adequately allege a safety hazard independent of Proposition 65 (risk of cancer and reproductive harm). But nowhere do Plaintiffs allege that the safety hazard was *unreasonable*. *Hammerling*, 615 F. Supp. 3d at 1086. Because Plaintiffs have not plausibly alleged that MDLZ concealed an *unreasonable* safety hazard, the Court grants MDLZ's motion to dismiss with respect to Plaintiffs' CLRA, FAL, and UCL claims based on the fraud-by-omission theory.

*ii.* Misrepresentation Theory

Plaintiffs fail to state claims based on Plaintiffs' affirmative misrepresentation theory to the extent those claims are based on statements from MDLZ's website because Plaintiffs do not plead reliance on those alleged misrepresentations; however, Plaintiffs sufficiently state claims based on misrepresentations on the Products' labels.

18

To plausibly allege a CLRA, FAL, or UCL claim based on misrepresentation, Plaintiffs "must allege that they relied on a misrepresentation and suffered injury as a result." *Hammerling*, 615 F. Supp. 3d at 1083 (citing *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1092 (1993)). Plaintiffs argue that MDLZ falsely advertises its Products by "intentionally market[ing] them so as to convey to reasonable consumers, including to Plaintiffs, that the Products did not contain such unsafe levels of toxic heavy metals." (FAC ¶ 28.) Plaintiffs point to alleged misrepresentations on the Products' labels and on MDLZ's website to support its claims.

*Website.* Plaintiffs fail to plead reliance on any alleged misrepresentations on Defendant's website. Regarding the Hu product, Plaintiffs allege that MDLZ states on its website: "We couldn't find a chocolate that met our standards. So we made our own." (FAC ¶ 30.) The website tells consumers that the founder of Hu, relying on "extensive health and wellness readings," "hung up his corporate suit and immersed himself in all things nutrition and food." (*Id.*) The website also tells consumers that the Hu product was developed after the founder investigated "the impact of certain foods and additives on our health, immunity, and performance" and that, as a result, the Hu product "replac[ed] weird, industrial ingredients with simple, healthier ones." (*Id.*)

Plaintiffs never allege how they relied on the statements on MDLZ's website in deciding to purchase the Hu Products. Because reliance is a critical element of a claim sounding in fraud, the Court grants MDLZ's motion to dismiss with respect to Plaintiffs' CLRA, FAL, and UCL claims to the extent they are based on alleged misrepresentations of the Hu Products on MDLZ's website.

*Labels.* However, Plaintiffs' claims based on alleged misrepresentations on the Product labels survive. Plaintiffs allege, "The Hu product makes prominent claims on the label of the Organic Simple Dark Chocolate 70% Cacao that convey to reasonable consumers that they do not contain unsafe levels of toxic heavy metals." (FAC ¶ 29.) These claims on the label include the following: (1) that the product contains only "SIMPLE" ingredients; (2) consumption of the product is "the way humans ate before

19

industry ruined food"; (3) a prominent feature of the phrase "Get Back to Human"; (4) that the product is comprised of only "ultra simple ingredients." (*Id.*)  Plaintiffs allege that these representations lead reasonable consumers to believe that the Products do not contain unsafe levels of toxic heavy metals.  As to the Green & Black products, Plaintiffs allege that the labels include promises that the products are made only with "the finest" cacao beans and other premium, fine ingredients.  (*Id.* ¶ 31.)  Plaintiffs allege that such messaging on the labels convey to reasonable consumers that the products do not contain unsafe levels of toxic heavy metals.

MDLZ argues its use of the statements "Get Back to Human," "SIMPLE DARK CHOCOLATE," and "made with fine Trinitario cacao beans" on its Product labels is puffery.[4]  "Generalized, vague, and unspecified assertions constitute 'mere puffery' upon which a reasonable consumer could not rely, and hence are not actionable." *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008), *aff'd*, 322 F. App'x. 489 (9th Cir. 2009) (cleaned up).  Puffery is "exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997).  By contrast, a "specific and measurable advertisement claim of product superiority based on product testing is not puffery." *Id.*  Whether a statement is puffery may be decided as a matter of law on a motion to dismiss. *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008).

Defendant's argument fails at this stage because Plaintiffs challenge the entirety of the labels.  The label should not be "read in the abstract." *Andrade-Heymsfield v. NextFoods, Inc.*, No. 21-cv-1446-BTM-MSB, 2023 WL 2576770, at *3 (S.D. Cal. Mar. 20, 2023).  Read in context, "SIMPLE DARK CHOCOLATE" and "GET BACK TO HUMAN" are specific claims about the Products.  So, too, is "made with fine Trinitario

---

[4] MDLZ does not specifically challenge any other statement mentioned in the FAC.  Therefore, the Court considers no statements other than "GET BACK TO HUMAN," "SIMPLE DARK CHOCOLATE," and "made with fine Trinitario cacao beans" in this Order.

cacao beans."  At this stage, the Court concludes Plaintiffs have plausibly alleged that a reasonable consumer reading such statements in the context of the full labels could be misled into believing that the Products do not contain unsafe levels of toxic heavy metals.

Other courts have reached similar conclusions about representations concerning "safety and quality assurances" of food products.  *Barnes*, 2022 WL 4283779, at *7 (the statements "our products will live up to the quality you expect," "natural supplement," and "[m]anufactured with LOVE" on protein shake labels that are not puffery); *see also Sebastian v. Kimberly-Clark Corp.*, No. 17cv442-WQH-JMA, 2017 WL 6497675, at *5 (S.D. Cal. 2017) ("[T]he statements 'simple formula' and 'gentle' are not mere puffery in the context of litigation about alleged misrepresentations regarding the ingredients in baby wipes."); *Zeiger*, 304 F. Supp. 3d at 851 (representations that dog food was "natural," and that its manufacturer adhered to "rigorous standards and practices" and produced "only the highest-quality pet food" are not puffery); *Andrade-Heymsfield v. NextFoods, Inc.*, No. 21-cv-1446-BTM-MSB, 2023 WL 3880076, at *1–2 (S.D. Cal. June 5, 2023) (collecting cases; finding the representations "good health game plan" and that a product would "renew" a person's digestive health to be actionable non-puffery).

Finally, MDLZ argues that Plaintiffs do not sufficiently allege reliance on such representations.  The Court disagrees.  "A consumer who relies on a product label and challenges a misrepresentation contained therein can satisfy the standing requirement" by alleging "she would not have bought the product but for the misrepresentation."  *Kwikset Corp.*, 51 Cal. 4th at 330.  Plaintiffs have repeatedly made such allegations here.  (*See, e.g.*, FAC ¶¶ 29, 36, 44.)  MDLZ concedes as much.  (*See* Def.'s Reply at 10.)  The Court therefore denies MDLZ's motion to dismiss claims based on alleged misrepresentations on the Product labels.

### b. *Breach of Express Warranties*

Plaintiffs have plausibly stated a claim for breach of express warranties.  Plaintiffs further allege that Defendant breached its express warranties pursuant to California Commercial Code § 2313 by selling products which contain harmful levels of lead and

cadmium contrary to Defendant's representations that the Products are free of harmful toxins.  A seller of goods creates an express warranty by making "[a]ny affirmation of fact or promise . . . to the buyer which relates to the goods and becomes part of the basis of the bargain." *Id.* § 2313(1)(a).  To prevail on a theory of breach of express warranty, Plaintiffs must prove that MDLZ "made affirmations of fact or promises" that "became part of the basis of the bargain." *Maneely v. Gen. Motors Corp.*, 108 F.3d 1176, 1181 (9th Cir. 1997).

MDLZ contends that the breach of warranty claims fail because Plaintiffs have not plausibly alleged that MDLZ's labeling is materially misleading.  (Def.'s Mot. at 24.) This argument fails.  For the reasons explained above, Plaintiffs have sufficiently alleged at this stage that (1) the Product labels convey to reasonable consumers that the Products free from unsafe levels of toxic heavy metals, and (2) that the Products nonetheless contain unsafe levels of toxic heavy metals contrary to Defendant's representations. Plaintiffs have sufficiently alleged a claim for breach of express warranties.  Accordingly, the Court denies MDLZ's motion to dismiss the breach of express warranties claim.

c. *Breach of Implied Warranty of Merchantability*

Plaintiffs have plausibly stated a claim for breach of an implied warranty of merchantability.   Plaintiffs allege Defendant breached an implied warranty of merchantability pursuant to California Commercial Code § 2314 by selling chocolate unsafe for consumption.  A contract for their sale of goods implies "a warranty that the goods shall be merchantable," Cal. Com. Code § 2314(1), meaning that the goods are "fit for the ordinary purposes for which such goods are used," *id.* § 2314(2)(c).  "A breach of the warranty of merchantability occurs if the product lacks 'even the most basic degree of fitness for ordinary use.'" *Birdsong*, 590 F.3d at 958 (quoting *Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 406 (2003)).

MDLZ contends that the breach of implied warranty claim fails because Plaintiffs have not plausibly alleged that MDLZ's labels are materially misleading.  (Def.'s Mot. at 24.)  This is not so.  When a claim involves human food, "a party can plead that a product

violates the implied warranty of merchantability through allegations that the product was unsafe for consumption, contaminated, or contained foreign objects." *Barnes*, 2022 WL 4283779, at *8. Plaintiffs repeatedly allege that the Products are unsafe for consumption because they contain high levels of lead or cadmium. (*See* FAC ¶¶ 16–27, 34–36, 47, 50.) The ordinary use of food to be eaten; thus, food that cannot be safely consumed "lacks 'even the most basic degree of fitness'" for its ordinary use. *Birdsong*, 590 F.3d at 958 (quoting *Mocek*, 114 Cal. App. 4th at 406). Plaintiffs have sufficiently stated a claim for breach of implied warranty of merchantability.

### d. *Unjust Enrichment*

Plaintiffs have also plausibly stated a claim for unjust enrichment. In California, "there is not a standalone cause of action for 'unjust enrichment,'" but "[w]hen a plaintiff alleges unjust enrichment, a court may 'construe the cause of action as a quasi-contract claim seeking restitution.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (quoting *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014)). "[T]he theory underlying" an unjust enrichment claim is "that a defendant has been unjustly conferred a benefit 'through mistake, fraud, coercion, or request.'" *Id.* (quoting 55 Cal. Jur. 3d Restitution § 2). "The return of that benefit is the remedy 'typically sought in a quasi-contract cause of action.'" *Id.* (quoting 55 Cal. Jur. 3d Restitution § 2).

Plaintiffs allege they are entitled to restitution because Defendant derived "financial benefits" from the class members' purchase of the Products. (FAC ¶¶ 127, 129.) They further allege it "would be inequitable, unconscionable, and unjust" for MDLZ to profit from their "wrongful conduct." (*Id.* ¶¶127–29.) Plaintiffs have sufficiently stated a quasi-contract cause of action: Defendant enticed Plaintiffs and class members to purchase their products through fraudulent misrepresentations and that Defendant was unjustly enriched as a result. *See Astiana*, 783 F.3d at 762 (plaintiff sufficiently states quasi-contract cause of action by alleging defendant had enticed plaintiffs to purchase its products "through false and misleading labeling" and that

defendant "was unjustly enriched as a result").  Defendant argues only that the unjust enrichment claim should fail because Plaintiffs have not sufficiently alleged fraudulent misrepresentations.  The Court rejects this argument, because as stated above, Plaintiffs have sufficiently alleged fraudulent misrepresentations at this stage.  Accordingly, the Court denies Defendant's motion to dismiss with respect to the unjust enrichment claim.[5]

## C. Motion to Stay Proceedings

In the alternative, MDLZ moves to stay proceedings under the primary jurisdiction doctrine if this Court were to deny its motion to dismiss.  The primary jurisdiction doctrine "comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views."  *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 63–64 (1956).  It is an inquiry "under which a court determines that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch."  *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008).  A decision to stay proceedings based on the primary jurisdiction doctrine is "committed to the sound discretion of the court."  *Syntek Semiconductor Co. v. Microchip Tech., Inc.*, 307 F.3d 775, 781 (9th Cir. 2002).

"In applying the doctrine of primary jurisdiction to a motion to dismiss, the 'question is whether any set of facts could be proved which would avoid application of

---

[5] Defendant makes no objection to the Court's equitable jurisdiction over Plaintiff's claims for equitable relief.  A federal court has equitable jurisdiction over a plaintiff's claims for equitable relief only when a plaintiff lacks an adequate legal remedy against a defendant for the harm alleged.  *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 842 (9th Cir. 2020).  However, a defendant waives objection to equitable jurisdiction if the defendant "expressly consent[s] to action by the court" or "fail[s] to object seasonably."  *Pusey & Jones Co. v. Hanssen*, 261 U.S. 491, 500–01 (1923); *see Turrey v. Vervent, Inc.*, No. 20-CV-00697-DMS-AHG, 2023 WL 6390620, at *5 (S.D. Cal. Sept. 29, 2023) (discussing waiver in the context of equitable jurisdiction).  Because Defendant has not raised the issue of equitable jurisdiction, the Court will not address it further at this time.

24

the doctrine.'" *Cotrina*, 94 F. Supp. 3d at 1190 (quoting *Syntek*, 307 F.3d at 780).  The doctrine "is not designed to secure expert advice from agencies every time a court is presented with an issue conceivably within the agency's ambit." *Id.* at 1114.  Rather, it "is to be used only if a claim requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency." *Id.* (citations and quotations omitted).

The issues raised in Plaintiffs' claims "do not clearly require the FDA's expertise or benefit from uniformity in administration." *Sciortino*, 108 F. Supp. 3d at 814.  Courts can determine the viability of such claims, *Reid v. Johnson & Johnson*, 780 F.3d 952, 967 (9th Cir. 2015), especially when there is "uncertainty over how and when the FDA will act." *Plum*, 2022 WL 16640802, at *1; *see Astiana*, 783 F.3d at 760 (stating "efficiency is the deciding factor in whether to invoke primary jurisdiction").  Such is the case here. MDLZ stresses that the FDA has an initiative underway, "Closer to Zero," for which the FDA is conducting research in order to recommend "action levels" for lead, cadmium, and other toxins in food—recommended limits in foods "that can be achieved by industry and progressively lowered as appropriate." (Def. Ex. 11.)  But the "FDA projects that by 2025, it will have finalized action levels for lead . . . and *may* have proposed action levels for cadmium." (Pls.' Opp'n at 25 n.2, emphasis added.)  Given the uncertainty of what action the FDA will take on lead and cadmium, and when, the Court declines to invoke the primary jurisdiction doctrine.  The Court denies MDLZ's request to stay proceedings.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

23-cv-00057-DMS-AHG

# IV.

## CONCLUSION AND ORDER

For the foregoing reasons, the Court **ORDERS** as follows:

1. The Court **GRANTS IN PART AND DENIES IN PART** MDLZ's request for judicial notice.  The Court takes judicial notice of Exhibits 1, 3, 7, 8, 9, 10, 11, and 14; and takes judicial notice of Exhibits 6, 12, and 13, except for the facts within them subject to reasonable dispute as explained in this Order.  The Court declines to take judicial notice of Exhibits 2, 4, and 5.

2. The Court **DISMISSES**, without prejudice, all of Plaintiffs' claims based on the G&B 85% product for lack of Article III standing.

3. The Court **GRANTS IN PART AND DENIES IN PART** MDLZ's motion to dismiss:

    a. The Court **GRANTS** the motion to dismiss as to (i) Plaintiffs' UCL, FAL, and CLRA claims based on Plaintiff's fraudulent omissions theory; and (ii) Plaintiffs' UCL, FAL, and CLRA claims based on alleged misrepresentations on Defendant's websites.  These claims are dismissed without prejudice.

    b. The Court **DENIES** the motion to dismiss as to all remaining claims.

4. The Court **DENIES** MDLZ's motion to stay proceedings in the alternative.

Within fourteen (14) days of the date of this Order, Plaintiffs may file a second amended complaint which cures the pleading deficiencies identified in this Order.  Plaintiffs are cautioned that if the second amended complaint fails to cure these deficiencies, the Court will dismiss the defective claims without further leave to amend.

**IT IS SO ORDERED.**

Dated:  November 22, 2023

Hon. Dana M. Sabraw, Chief Judge
United States District Court

26

23-cv-00057-DMS-AHG